## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|   |   |
|---|---|
| JOSE CRUZ MEDINA, | |
| *Petitioner*, | |
| v. | Case No. 25-cv-1768-ABA |
| KRISTI NOEM, *et al.*, | |
| *Respondents* | |

## MEMORANDUM OPINION AND ORDER

Petitioner José Cruz Medina is a citizen of Honduras who, until he was arrested

on June 3, 2025, by U.S. Immigration and Customs Enforcement (ICE) during a routine

check-in, resided in Maryland. In 2019, an immigration judge granted Mr. Cruz Medina

withholding of removal under the Convention Against Torture. ECF No. 1-1; ECF No. 1 ¶

22. 8 CFR §§ 1208.16(c), 1208.18(a).[1] Following his June 3 detention, ICE served on him

two documents: a Notice of Removal stating that ICE "intends to remove you to El

Salvador," and a Notice of Revocation of Release stating, "Your case is under current

---

[1] "To qualify for Convention Against Torture protection, a noncitizen must show that it
is more likely than not that he or she would be tortured in the country of removal."
*Quintero v. Garland*, 998 F.3d 612, 645 (4th Cir. 2021) (citing 8 C.F.R. § 1208.16(c)(2)).
Torture is defined as (1) "any act by which severe pain or suffering, whether physical or
mental, is intentionally inflicted on a person," (2) for certain specified purposes, such as
to obtain information or a confession, to punish, or to intimidate or coerce, and (3) "by,
or at the instigation of, or with the consent or acquiescence of, a public official . . . or
other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). "Public officials
acquiesce to torture when, 'prior to the activity constituting torture, [they] have
awareness of such activity and thereafter breach [their] legal responsibility to intervene
to prevent such activity.'" *Rodriguez-Arias v. Whitaker*, 915 F.3d 968, 971 (4th Cir.
2019) (alterations in original) (quoting 8 C.F.R. § 1208.18(a)(7)). "Importantly,
acquiescence does not require actual knowledge of torture." *Quintero*, 998 F.3d at 645.

review by El Salvador for the issuance of a travel document." ECF Nos. 9-1 & 9-2. Mr. Cruz Medina has filed a petition for a writ of habeas corpus, seeking release from detention.

Because the Constitution prohibits "indefinite detention," when the government wishes to remove a non-citizen to another country, the applicable detention statute, 8 U.S.C. § 1231(a)(6), only authorizes detention after a 90-day removal period (which the parties here agree ended in 2019) if removal is "reasonably foreseeable." *Zadvydas v. Davis*, 533 U.S. 678, 689, 699 (2001). The two documents cited above constitute the only evidence in the record on the foreseeability of Mr. Cruz Medina's removal. As discussed below, that evidentiary record raises serious questions about whether Mr. Cruz Medina's continued detention is authorized by § 1231(a)(6) and *Zadvydas*. It is unclear, for example, whether El Salvador is willing to not only accept Mr. Cruz Medina but also permit him to live there (as opposed to sending him along to Honduras). On the other hand, immigration is a context in which the executive branch has historically been given substantial deference, to account for that branch's "greater immigration-related expertise." *Zadvydas*, 533 U.S. at 700.

For the reasons discussed below, the Court concludes that the record at present does not rise to the level of entitling Mr. Cruz Medina to a writ of habeas corpus. But the *Zadvydas* standard is inherently dynamic. Thus, the Court will retain jurisdiction of this matter and require monthly updates from the government, so that the Court may further determine whether the circumstances justify continued detention.

## I.    BACKGROUND

Mr. Cruz Medina is a citizen of Honduras who first entered the United States on May 2, 2012. He was apprehended by ICE on May 10, 2012. He was removed to

2

Honduras on May 30, 2012. He re-entered the United States (unlawfully) about a year later, in May 2013. He was placed in removal proceedings, and released under an order of supervision. In those proceedings, he sought protection from removal, including based on a fear of how he would be treated by Honduran authorities if he were sent back there. A hearing was held on March 6, 2019. The immigration judge granted Mr. Cruz Medina withholding of removal under the Convention Against Torture with respect to Honduras. ECF No. 1-1; ECF No. 1 ¶ 22. In the absence of an attempt by the government to remove Mr. Cruz Medina to a country other than Honduras, the order granting him withholding of removal, which the government did not appeal, entitled him to remain in the United States.

On June 3, 2025, Mr. Cruz Medina reported for his regularly scheduled check-in with ICE at its Baltimore office, was detained, and was served with the Notice of Removal and Notice of Revocation of Release. The Notice of Removal was a fill-in-the-blank form that reads as follows (ECF No. 9-1):

**NOTICE OF REMOVAL**

This letter is to inform you that U.S. Immigration and Customs Enforcement (ICE) intends to remove you to ___El Salvador_____.

The Notice of Removal also included a certification that it was read to Mr. Cruz Medina in Spanish. *Id.*

The Notice of Revocation of Release stated as follows:

> This letter is to inform you that your order of supervision has been revoked, and you will be detained in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your official

3

alien file and a determination that there are changed circumstances in your case.

ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you. On 03/06/2019, you were ordered removed to any country other than Honduras by an authorized U.S. DHS/DOJ official and you are subject to an administratively final order of removal. **Your case is under current review by El Salvador for the issuance of a travel document.**

Based on the above, and pursuant to 8 C.F.R. § 241.4 / 8 C.F.R. § 241.13, you are to remain in ICE custody at this time. You will promptly be afforded an informal interview at which you will be given an opportunity to respond to the reasons for the revocation. You may submit any evidence or information you wish to be reviewed in support of your release. If you are not released after the informal interview, you will receive notification of a new review, which will occur within approximately three months of the date of this notice.

You are advised that you must demonstrate that you are making reasonable efforts to comply with the order of removal and that you are cooperating with ICE's efforts to remove you by taking whatever actions ICE requests to affect your removal. You are also advised that any willful failure or refusal on your part to make timely application in good faith for travel or other documents necessary for your departure, or any conspiracy or actions to prevent your removal or obstruct the issuance of a travel document, may subject you to criminal prosecution under 8 U.S.C. Section 1253(a).

ECF No. 9-2 at 1 (emphasis added). The Notice of Revocation of Release was signed by Acting Field Office Director Nakita Baker. *Id.*

Mr. Cruz Medina filed the pending Petition for Writ of Habeas Corpus later that day, June 3. He seeks a writ ordering release from ICE custody. He alleges that his continued detention by ICE violates 8 U.S.C. § 1321(a)(6) as interpreted by the Supreme

Court in *Zadvydas* (count 1), due process (count 2), and 8 C.F.R. § 241.4 (count 3). ECF No. 1 at 8–9. The Court held an initial scheduling conference on June 4. The parties jointly proposed a briefing schedule, which the Court entered on June 6. ECF No. 8. Respondents filed a brief in response to the petition on June 11. ECF No. 9. Petitioner filed a reply brief on June 18. ECF No. 10.

The Court held a hearing on June 20. As of that date, the government had not conducted the "informal interview" that the Notice of Revocation of Release assured would be conducted "promptly." *Cf.* ECF No. 9-2 at 2; *see also* 8 C.F.R. § 241.4(l)(1) (requiring that, upon revocation of release, "an initial informal interview" be conducted "promptly"). In addition, at the June 20 hearing, the government did not report any progress regarding whether the government was moving forward with potentially removing Mr. Cruz Medina to El Salvador, or any information regarding steps that El Salvador has taken regarding issuance of a travel document or permission for Mr. Cruz Medina to live in El Salvador.

As of the issuance of this opinion, neither party has reported that an informal interview has taken place. And the government has not reported any progress suggesting it is any closer to removing Mr. Cruz Medina to El Salvador (or elsewhere) than it was when the petition was filed.

Mr. Cruz Medina, for his part, in the time since he filed the petition for a writ of habeas corpus in this Court, has requested withholding of removal with respect to El Salvador, based on a fear that (1) if sent to El Salvador, he is likely to be sent to Honduras, where, as an Immigration Judge already found, he is likely to face torture within the meaning of the Convention Against Torture, *see* n.1, *supra*, and (2) based on a concern that, if sent to El Salvador, he may be detained at the Centro de

Confinamiento del Terrorismo (CECOT), where he contends he also faces a risk of torture. ECF No. 10 at 11–12; ECF No. 10-3 at 1–2; ECF No. 10-4.

## II.    DISCUSSION

Mr. Cruz Medina requests an order releasing him from immigration detention; that is the sole form of relief he seeks from this Court, at least at this time.[2] As explained below, this Court has jurisdiction over the petition, and regardless of whether Mr. Cruz Medina is within a six-month period during which detention is "presumptively reasonable" under *Zadvydas* (the applicability of which this Court need not decide), this Court must determine whether removal is "reasonably foreseeable." 533 U.S. at 699–701. On the current record, the Court finds that Mr. Cruz Medina has not shown an entitlement to habeas relief, but he raises substantial questions in that regard, and thus the parties will be required to provide monthly updates so that the Court may discharge its obligation to determine whether detention remains authorized.[3]

---

[2] Although Mr. Cruz Medina's petition as originally filed seeks two forms of relief— release from physical custody and an injunction preventing his removal from the U.S. unless certain procedures are followed, *see* ECF No. 1 at 10—at this time he only seeks habeas relief with respect to his detention. ECF No. 10 at 21 ("The writ of habeas corpus should issue, and this Court should order that [Petitioner] be released from detention forthwith and restored to his Order of Supervision.").

[3] At the end of its brief in opposition to Mr. Cruz Medina's petition, the government contends this Court lacks jurisdiction over the petition pursuant to 8 U.S.C. § 1252(g) because the petition seeks a "stay from removal." ECF No. 9 at 20 (quoting *Viana v. President of the United States*, Case No. 18-cv-222-LM, 2018 WL 1587474, at *2 (D.N.H. Apr. 2, 2018)); *see also id.* at 21 ("[T]he statutory scheme here forecloses any habeas review under section 2241 in district courts which seeks to stay the execution of a removal order."). As noted above, at this time Mr. Cruz Medina only seeks habeas relief with respect to his detention, not with respect to removal. *See* n.2, *supra*. Accordingly, this claim does not implicate § 1252(g). In *Zadvydas*, the Supreme Court expressly held that, notwithstanding 8 U.S.C. § 1252(g), "§ 2241 habeas corpus proceedings remain

###### A.    Detention is authorized in these circumstances only if removal is "reasonably foreseeable"

Ordinarily, when an individual is issued a final order of removal, that person must be removed from the country within 90 days. 8 U.S.C. § 1231(a)(1)(A). Except for situations where the person is "detained or confined" in a case other than the "immigration process," or where a court orders a stay of removal, the 90-day removal period begins when the removal order becomes administratively final. *Id.* § 1231(a)(1)(B). Under § 1231(a)(6), the government is permitted to continue to detain individuals who are deemed "inadmissible" beyond the removal period, or it may release them under specified terms of supervision. *Id.* § 1231(a)(6); *see also id.* § 1182 (identifying categories of immigrants who are "inadmissible").

Here, the government alleges, and Petitioner does not appear to dispute, that Mr. Cruz Medina is "inadmissible" under § 1182 because he is present in the U.S. without being admitted or paroled. *See* ECF No. 9 at 12; 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled . . . is inadmissible."). He was issued an order of removal in or before 2019, ECF No. 9 at 12, ECF No. 1-1, so his 90-day removal period under § 1231(a)(1)(A) ended several years ago. The government

---

available as a forum for statutory and constitutional challenges to post-removal-period detention." 533 U.S. at 688; *see also Bowrin v. U.S. I.N.S.*, 194 F.3d 483, 488 (4th Cir. 1999) (holding that "§ 1252(g) . . . is inapplicable to final deportation orders"). And although the REAL ID Act, which became effective on May 11, 2005, included several amendments to § 1252, *see* Real ID Act, Pub. L. No. 109-13, §§ 101(e), 101(f), 106, 119 Stat. 231, 302-323 (May 11, 2005), it did not materially amend § 1252(g). The language the *Zadvydas* Court held rendered § 1252(g) inapplicable to post-removal detention challenges, limiting § 1252(g) to a "cause or claim . . . arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," was unaffected by the 2005 amendments.

does not dispute this. ECF No. 9 at 12 ("Because Petitioner's order of removal was final in 2019, Petitioner is now outside of the 90-day removal period during which the government 'shall detain' the individual.") (quoting 8 U.S.C. § 1231(a)(2)). As noted above, in 2019 he received withholding of removal with respect to Honduras, ECF No. 1-1, and, consistent with § 1231(a)(6), was released from detention with an Order of Supervision. *See* ECF No. 1 ¶¶ 24–26. Accordingly, as a matter of express statutory language, § 1231(a)(6) provides that he "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in [§ 1231(a)(3)]." 8 U.S.C. § 1231(a)(6).

But a "statute permitting *indefinite* detention of an alien would raise a serious constitutional problem." *Zadvydas*, 533 U.S. at 690 (emphasis added). Thus, although § 1231(a)(6) does not contain an explicit limit on the length of detention in those circumstances, the *Zadvaydas* Court held that, in light of constitutional due process protections with respect to deprivations of liberty, the statute must be read to "contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." *Id.* at 682. *Zadvydas* established that determining whether detention under particular circumstances is authorized requires deciding "whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.* at 699. A habeas court "should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.*

"[I]f removal is not reasonably foreseeable," based on delays or uncertainties associated with, for example, diplomatic negotiations that are ongoing and must conclude before the government may actually remove him, the court should "hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700;

8

*see also Demore v. Kim*, 538 U.S. 510, 527 (2003) (explaining that what rendered removal in *Zadvydas* not reasonably foreseeable was that removal was "no longer practically attainable" and thus "detention there did not serve its purported immigration purpose"); *Castaneda v. Perry*, 95 F.4th 750, 757 (4th Cir. 2024) ("[T]he clear takeaway from *Demore* and *Jennings* [*v. Rodriguez*, 583 U.S. --, 138 S. Ct. 830 (2018)] is that '*Zadvydas* should not be expanded beyond the context of the *indefinite and potentially permanent* detention involved there.'") (quoting *Miranda v. Garland*, 34 F.4th 338, 361 (4th Cir. 2022)). In *Clark v. Martinez*, the Supreme Court held that the *Zadvydas* standard applies not only to "those ordered removed who are removable under [8 U.S.C.] § 1227(a)(1)(C), § 1227(a)(2), or § 1227(a)(4)," but also "those ordered removed who are inadmissible under § 1182." 543 U.S. 371, 377–78 (2005).

### B.    The *Zadvydas* presumption

To help "guide lower court determinations" on whether removal is "reasonably foreseeable" and to "limit the occasions when courts will need to make them," the Supreme Court held that six months of post-removal-order detention is "presumptively reasonable." *Id*. at 700–01. But that raises two questions that bear on Mr. Cruz Medina's petition: What does it mean for detention to be "presumptively" reasonable? And when does that six-month period run, *i.e.* is Mr. Cruz Medina within that six-month period or has that period expired? This section addresses the first question; the next section addresses the second one.

In *Zadvydas*, the Supreme Court instructed that detention of a person within the six-month period—which in *Zadvydas* referred to a continuous period including and following the 90-day removal period under § 1231(a)(2)—is "presumptively reasonable." *Id*. at 701. Some courts have held that until the six-month *Zadvydas* period concludes,

detention is *conclusively* reasonable—in other words, that during that period courts are precluded from inquiring at all into whether removal is reasonably foreseeable. *See, e.g.*, *Grigorian v. Bondi*, Case No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025) ("Grigorian's *Zadvydas* claim fails because he has not been detained for more than six months."); *Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300 at *4 (S.D. Fla. July 17, 2025) (finding the petition was "premature" because "Petitioner has not been detained for more than six months"). But that interpretation runs headlong into the Supreme Court's clear articulation of its holding as adopting a *presumption* of reasonableness before the six-month period expires. A presumption is just that: a default, a starting point. *See, e.g.*, Ian Bratlie & Adriana Lafaille, *A 180-Day Free Pass? Zadvydas and Post-Order Detention Challenges Brought Before the Six-Month Mark*, 30 Geo. Immigr. L.J. 213, 240–243 (2016).

But what *type* of presumption is this? Often a presumption allocates the burden of production. *See* Fed. R. Evid. 301 ("In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally."); *see, e.g.*, *Elam v. Early*, 138 F.4th 804, 818 (4th Cir. 2025) (property ownership). That is the type of presumption that applies to pretrial detention under the Bail Reform Act when, for example, a person has been charged with one of several enumerated offenses. *See* 18 U.S.C. § 3142(e)(3); *United States v. Davis*, 449 F. Supp. 3d 532, 534 (D. Md. 2020) (collecting cases); Federal Judicial Center, *The Bail Reform Act of 1984* (4th ed. 2022), at 37 ("It must be emphasized that the drug-and-firearm-offender presumption imposes on defendants only a burden of *production*; the burden of *persuasion* concerning the

risk of flight and dangerousness remains with the government.") & n.173 (collecting cases). Other times legislatures and courts use the term presumption to allocate the burden of persuasion. *See, e.g.*, *Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*, 594 U.S. 113, 126 (2021) ("presumption" in security fraud class action with respect to a lack of price impact based on misrepresentations refers to a defendant's burden of persuasion, rather than a burden of production).

Here, it is not entirely clear which type of presumption the Supreme Court considered itself to be adopting in *Zadvydas* for the period before the six-month period expires. *After* the six-month period, the government has at least a burden of production with respect to whether continued detention is authorized, though it may also have the burden of persuasion. 533 U.S. at 701 ("After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."). The reasoning in *Zadvydas* suggests that *before* the six-month period expires, the burdens of production and persuasion remain with a person who has been detained, to establish that removal is not reasonably foreseeable.

But regardless of which *type* of presumption applies to a *Zadvydas* claim, which this Court need not decide, what *Zadvydas* did make clear was that it was adopting a presumption—not a conclusive bar to adjudication of whether continued detention is authorized that lifts only after six months have elapsed. "Although the Supreme Court established a six-month period of presumptively reasonable detention, it did not preclude a detainee from challenging the reasonableness of his detention before such time." *Munoz-Saucedo v. Pittman*, --- F. Supp. 3d ----, 2025 WL 1750346, *5 (D.N.J. June 24, 2025). The Supreme Court "recognize[d] . . . that review must take appropriate

account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Zadvydas*, 533 U.S. at 700. But as the Supreme Court instructed, "courts can take appropriate account of such matters without abdicating their legal responsibility to review the lawfulness of an alien's continued detention." *Id*. The Supreme Court clearly did not envision that courts would entirely step aside and permit six months of detention even when there was no likelihood that a person would be removed in the reasonably foreseeable future.

During the six-month period, "[t]he presumption of reasonableness is the default," and the government "bears no burden to justify detention." *Munoz-Saucedo*, --- F. Supp. 3d ----, 2025 WL 1750346 at *6. But if a petitioner "claim[s] and *prove[s]* . . . that his removal is not reasonably foreseeable"—including during the six-month period—the petitioner "can overcome that presumption" and detention is no longer authorized. *Id*. After the six-month period ends, that presumption goes away, and "the petitioner is entitled to release if he 'provides good reason to believe' that removal is not reasonably foreseeable, and the government is unable to rebut that showing." *Id*. (quoting *Zadvydas*, 533 U.S. at 701). "To hold otherwise"—in other words, to suggest that courts only begin to inquire into whether detention is reasonably foreseeable after the expiration of the six-month period—"would condone detention in cases where removal is not reasonably foreseeable or even functionally impossible, so long as it did not exceed six months." *Id*. (citing *Cesar v. Achim*, 542 F. Supp. 2d 897, 904 (E.D. Wis. 2008), and Bratlie & Lafaille, *A 180-Day Free Pass?*, 30 Geo. Immigr. L.J. at 239). After all, whether detention is "reasonably necessary to secure removal is determinative of

whether the detention is, or is not, pursuant to statutory authority." *Zadvydas*, 533 U.S. at 699. "The basic federal habeas corpus statute grants the federal courts authority to answer that question." *Id.*

In addition to being the only interpretation consistent with the *Zadvydas* Court's description of its holding as a "presumption[]," *id.* at 701, this is the only interpretation consistent with the Supreme Court's reasoning. The starting point for the analysis in *Zadvydas* was the Fifth Amendment's Due Process Clause, which forbids the Government from "depriv[ing]" any "person . . . of . . . liberty . . . without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992)). The Court expressly held that "[t]here is no sufficiently strong special justification here for indefinite civil detention," and "by definition" any concern about "preventing flight" is "weak or nonexistent where removal seems a remote possibility at best." *Id.* If there comes a point during the six-month period at which it is "no longer reasonably foreseeable" that a person will actually be removed, then detention "is no longer authorized." *Id.* at 699; *see also Clark*, 543 U.S. at 384 ("*Zadvydas* did not hold that the statute authorizes detention until it approaches constitutional limits; it held that, *since* interpreting the statute to authorize indefinite detention (one plausible reading) would approach constitutional limits, the statute should be read (in line with the other plausible reading) to authorize detention only for a period consistent with the purpose of effectuating removal.").

This conclusion is also confirmed by the *Zadvydas* Court's explanation that by adopting a presumption-based approach, it was "limit[ing] the occasions" when courts

will need to make "difficult judgments" about whether removal is reasonably foreseeable. *Id.* at 700–01. If a petitioner cannot come forward with "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," a *Zadvydas* petition fails, both during the six-month period and after. *Id.* at 701. *After* the six-month period, where a petitioner articulates such "good reason," that triggers at least a burden of production by the government to come forward with "evidence sufficient to rebut that showing." *Id.*[4] *During* the six-month period, the burdens of production and persuasion remain with the petitioner. By delaying the burden shift until after the six-month period expires, the Supreme Court "limit[ed] the occasions"—but, crucially, did not *eliminate* the occasions—when courts will need to make the ultimate determination of whether a petitioner is reasonably likely to be removed in the foreseeable future. The question of whether "continued" detention is

---

[4] *Zadvydas* did not decide whether the government's burden after the six-month period is one of production or persuasion. On one hand, ordinarily habeas petitioners bear the burden of persuasion. 2 Federal Habeas Corpus Practice and Procedure § 30.2 (2025) (explaining that ordinarily a petitioner seeking release or a modification of custody status "bears the burden of proof by a preponderance of the evidence," but "[s]ometimes" the government bears a burden of persuasion, at least when it comes to certain defenses). On the other hand, the Supreme Court in *Clark* appears to have treated the government's post-*Zadvydas* period burden as one of persuasion. 543 U.S. at 386–87 ("Both Martinez and Benitez were detained well beyond six months after their removal orders became final. The Government having brought forward nothing to indicate that a substantial likelihood of removal subsists despite the passage of six months (indeed, it concedes that it is no longer even involved in repatriation negotiations with Cuba); and the District Court in each case having determined that removal to Cuba is not reasonably foreseeable; the petitions for habeas corpus should have been granted."). The Court need not decide for present purposes whether the government's burden, outside the *Zadvydas* six-month period, is one of production or also persuasion.

authorized is a question that can be asked, and must be resolved, for detention under § 1231(a)(6) to be constitutional, regardless of whether the six-month period has ended.[5]

### C.    Does the six-month "presumptively reasonable" period run from when an order of removal becomes administratively final or only while a person is detained?

Sorting out the impact of the presumption on whether detention is authorized by § 1231(a)(6) leads to the next question, whether a petitioner falls within or outside the six-month *Zadvydas* period. Here, Mr. Cruz Medina's removal order and the order granting withholding of removal were issued on March 6, 2019. ECF No. 1-1. Because he was granted withholding of removal with respect to Honduras, and because the government at that time did not seek his removal to a third country, he was released under terms of supervision. *See* ECF No. 10-2.

Mr. Cruz Medina argues that the six-month *Zadvydas* period ends on the date six months after an order of removal becomes administratively final, regardless of whether the person has been detained during that time. ECF No. 10 at 8 ("[T]he 180-day presumptively reasonable period under 8 U.S.C. § 1231(a)(6) as interpreted by *Zadvydas* . . . expired on September 2, 2019—nearly six years ago."). In other words, he argues that when *Zadvydas* interpreted 8 U.S.C. § 1231(a)(6) to authorize "continued" detention, the first portion of which would be deemed presumptively reasonable, that presumption only applies if the detention is in fact a *continuation* of detention from the

---

[5] As explained in the next section, *Zadvydas* does not control the question of whether the six-month period runs from the date an order of removal becomes administratively final (here, in March 2019) or from a later date, such as when a person who had been on release is detained or re-detained (here, in June 2025). But regardless of when the six-month period runs, the point here is that any presumption that removal is reasonably foreseeable during the six-month period is just that, a presumption, one that can be rebutted upon a showing that removal is *not* reasonably foreseeable.

90-day removal period under § 1231(a)(2)(A). The government argues the Supreme Court in *Zadvydas* was referring to six months *of detention*, even if the period of detention occurs years after the order of removal became final, and that because Mr. Cruz Medina has not yet been detained for a *total* of at least six months, his detention remains "presumptively reasonable" under the *Zadvydas* standard. ECF No. 9 at 4, 15.[6] *See also, e.g.*, *Maziar Mosberian Tanha v. Warden*, Case No. 25-cv-2121-JRR, 2025 WL 2062181 at *7 (D. Md. July 22, 2025) (denying habeas petition and reasoning that the six-month *Zadvydas* period does not run if an individual is released on an order of supervision  because "the Government's issuance of [an order of supervision] in lieu of [detention] . . . effectively avoided the very concern the Supreme Court sought to cure" in setting the presumptive six-month *Zadvydas* period). As discussed above, determining whether Mr. Cruz Medina is within the six-month period does not affect whether an inquiry into whether removal is reasonably foreseeable must take place (it must), but rather whether the government has at least a burden of production with respect to whether removal is reasonably foreseeable.

So where, as here, a person with withholding of removal was released and then arrested and detained—either detained for the first time or re-detained—is the

---

[6] Actually, the government's argument is that no *Zadvydas* inquiry applies at all until a person has been detained for at least six months. ECF No. 9 at 4 (arguing that petitioner's "due process challenge to his detention fails because it is premature"); *see also id.* at 15 (a *Zadvydas* challenge "cannot be raised until Petitioner has been detained for six-months [sic] in post-final order custody"). But as discussed above, that was not the holding in *Zadvydas*; the six-month period refers to which party bears the burden of proof with regard to the foreseeability of removal. The Court interprets the government's fallback argument here to be that even if detention is subject to *Zadvydas* during the six-month period, the clock only starts to run, or continues to run, when a person is in immigration detention.

government entitled to the *Zadvydas* presumption that removal is reasonably foreseeable?

Zadvydas does not squarely resolve this question, because there the petitioners were continuously detained during their "removal period" and after. 533 U.S. at 684–85. Sometime in 1994, after the lead petitioner ended a term of incarceration on a criminal conviction, he was ordered deported to Germany, but Germany "told the INS that it would not accept Zadvydas because he was not a German citizen." *Id.* at 684. "Shortly thereafter, Lithuania refused to accept Zadvydas because he was neither a Lithuanian citizen nor a permanent resident." *Id.* "In 1996, the INS asked the Dominican Republic (Zadvydas' wife's country) to accept him, but this effort proved unsuccessful" as well. *Id.* In 1997, after Zadvydas had been continuously held in immigration detention for approximately three years, a federal district court granted a petition for a writ of habeas corpus. *Id.* at 685. The case also involved another petitioner who, after serving a criminal sentence, was in immigration detention for a period of time, after which a district court found, after an evidentiary hearing, that there was "no 'realistic chance' that Cambodia"—the only country to which it seems removal had been proposed—"would accept [him]." *Id.* at 685–86.

A premise of the Supreme Court's analysis in *Zadvydas* was that detention was continuous throughout the 90-day "removal period" and thereafter. *See, e.g.*, *id.* at 686 ("Zadvydas asked us to review the decision of the Fifth Circuit authorizing his *continued* detention. The Government asked us to review the decision of the Ninth Circuit forbidding Ma's *continued* detention.") (emphases added); *id.* at 687 (describing the case as a habeas petition seeking "review of continued *custody after* a deportation order had become final") (emphasis in original). After all, at least as a statutory matter, and in

the absence of withholding of removal, detention is mandatory during the 90-day removal period. 8 U.S.C. § 1231(a)(2)(A). And the Supreme Court in *Zadvydas* tethered its holding directly to the concept of *continued* detention: "[I]nterpreting the statute to avoid a serious constitutional threat, we conclude that, once removal is no longer reasonably foreseeable, *continued* detention is no longer authorized by statute." 533 U.S. at 699 (emphasis added).

So there are good reasons to believe that the Supreme Court understood the presumption it was adopting to apply only during the first six months after an order of removal becomes administratively final. But here, this Court need not decide whether Mr. Cruz Medina is inside or outside the six-month *Zadvydas* period. That is because regardless of whether he is within the six-month period (*i.e.*, even if the *Zadvydas* six-month clock started or re-started when he was detained on June 3), the current evidentiary record does not rise to the level of establishing that removal is not reasonably foreseeable. The Court turns to that issue now.[7]

### D.    Is Petitioner's removal reasonably foreseeable?

As discussed above, regardless of whether the six-month *Zadvydas* period has expired, the question presented by Mr. Cruz Medina's petition is whether his removal is reasonably foreseeable. Here, under both standards (*i.e.*, regardless of whether Mr. Cruz

---

[7] Detention may also be permissible when a person would present a danger to the public, but the government makes no such allegation with respect to Mr. Cruz Medina. *See* 8 C.F.R. § 241.13(b) (a person may be released "under an order of supervision under [8 C.F.R.] § 241.4 if [the government] determines that [the individual] would not pose a danger to the public"); *see also Zadvydas*, 533 U.S. at 697 ("protecting the community" from dangerous individuals is a secondary statutory purpose of the post-deportation-order detention statute).

Medina is within the six-month *Zadvydas* period or not), he has not shown that he is entitled to release from detention under the *Zadvydas* standard at this time.

Assuming (without deciding) that Mr. Cruz Medina's *Zadvydas* period expired in 2019, the questions are (1) whether Mr. Cruz Medina has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and (2) if so, whether the government has "respond[ed] with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

On the first question, petitioner has offered a satisfactory "good reason to believe" that the government is unlikely to effectuate his removal in the reasonably foreseeable future. Under *Zadvydas*, insofar as the presumption does not apply (which, as stated above, the Court assumes without deciding), this is a burden of production, not persuasion; to shift the burden of production to the government Mr. Cruz Medina need not *prove* that "there is no significant likelihood of removal in the reasonably foreseeable future," but rather must articulate a "good *reason to believe*" that removal is unlikely in the reasonable foreseeable future. *Id.* (emphasis added). Here, petitioner has offered such articulation. Not only has he filed a declaration under penalty of perjury that he has no claim to citizenship, permanent residence, or legal immigration status in any country other than Honduras, ECF No. 10-1 ¶ 6, and that he fears persecution or torture in El Salvador, ECF No. 10-3 at 1–2, ECF No. 10-1 ¶ 8.[8] But of particular relevance under *Zadvydas*, he has pointed to the noncommittal nature of the representations that the government has made regarding the possibility of removal to El

---

[8] As of July 8, Mr. Cruz Medina had not received a date for his reasonable fear interview. *See* ECF No. 14 at 3. He contends upon information and belief that the matter has not been referred to USCIS to schedule such an interview. *Id.* (citing ECF No. 10-4).

Salvador: that it "intends" to remove him to El Salvador (ECF No. 9-1), and that his case is "under current review by El Salvador for the issuance of a travel document" (ECF No. 9-2 at 1).

This means the question becomes whether the government has come forward with sufficient *evidence* to "rebut that showing." *Zadvydas*, 533 U.S. at 701. As explained above, the evidentiary record on the government's side of the ledger comprises the two documents prepared by ICE: (1) a fill-in-the-blank form claiming that ICE "intends" to remove Mr. Cruz Medina to El Salvador, ECF No. 9-1, and (2) a form asserting that his "case is under review by El Salvador for the issuance of a travel document," ECF No. 9-2 at 1. Based on those two documents, the government argues that "ICE is prepared to effectuate his removal order pursuant to the processes set forth in *D.V.D.*" ECF No. 9 at 3–4.

Those two documents do not go particularly far in showing that the government is actively working to effectuate removal such that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The record leaves more questions than answers. For example, how did El Salvador end up as the country ICE listed on the forms? How likely is El Salvador to actually issue the necessary authorizations to travel and remain there? How long will this process take—weeks, months, longer? What steps did the government take before revoking Petitioner's release to effectuate his removal to El Salvador? What steps has it taken since then? These open questions leave substantial uncertainty regarding whether there is a

"significant likelihood" that Mr. Cruz Medina will be removed to El Salvador in the "reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.[9]

   But those questions arise in the context of immigration, a context in which, as a matter of separation of powers, the courts grant substantial deference to "Executive and Legislative Branch decisionmaking." *Zadvydas*, 533 U.S. at 695. They also arise in a context where Congress *mandated* detention during the 90-day removal period, 8 U.S.C. § 1231(a)(2)(A), and authorized detention after a final order of removal, *id*. § 1231(a)(6), at least where removal is reasonably foreseeable, *Zadvydas*, 533 U.S. at 699. That detention "power is subject to important constitutional limitations," *id*., but the existence of that deference to the executive branch, and Congress's intent as

---

[9] There are also open questions about whether, for example, the additional immigration protections that Mr. Cruz Medina has invoked may result in relief with respect to removal to El Salvador, and how long those procedures may take. A reasonable fear determination typically must be conducted within 10 days of the referral. *See* 8 C.F.R. 208.31(b). Petitioner contends that while he requested such an interview on June 4, even weeks later ICE had not referred the matter to USCIS to schedule an interview. ECF No. 10 at 5; ECF No. 14 at 3. *See* 8 C.F.R. 208.31(b), (c), (f) (requiring an interview with an asylum officer to assess reasonable fear and, in the event of a denial, providing an option for the individual to seek review of a denial by an Immigration Judge), 8 C.F.R. 208.16 (b), (c) (outlining the process for seeking withholding of removal pursuant to the Convention Against Torture). It is unclear, however, whether those questions are proper to consider as part of the *Zadvydas* analysis. The Fourth Circuit has held that "ongoing withholding-only proceedings *alone* are insufficient to demonstrate that removal is no longer reasonably foreseeable." *Castaneda*, 95 F.4th at 758 (emphasis added). It appears to be an open question in this Circuit whether delays associated with withholding-only proceedings should be considered as part of the *Zadvydas* analysis where there are also other sources of delay or uncertainty, such as if "repatriation negotiations" or other similar diplomatic processes have ended or stalled. *See Clark*, 543 U.S. at 386. At least in the current posture, this Court need not decide whether delays or uncertainties with regard to whether a noncitizen might be entitled to withholding of removal should be considered under a *Zadvydas* analysis where there are *also* delays or uncertainties in terms of whether a third country will accept a noncitizen.

reflected in § 1231, are factors that courts must consider in deciding whether a *Zadvydas* petitioner has proven an entitlement to relief pursuant to the habeas statute, 28 U.S.C. § 2241.

Here, at least on the current record, even assuming (without deciding) that Mr. Cruz Medina's *Zadvydas* period expired in 2019, Mr. Cruz Medina has not shown that his removal to El Salvador is not reasonably foreseeable. The Court accepts the government's representation that Mr. Cruz Medina's "case is under current review by El Salvador for the issuance of a travel document," and that that "review" began sometime before 3:00 p.m. on June 3. ECF No. 9-2 at 1, 2. In the order set forth below, the Court requires the government to provide the factual basis for that representation, as well as any further developments in that regard. And there is substantial force to Petitioner's argument that the government has had years to put in place a plan to identify a country other than Honduras to which to remove Mr. Cruz Medina. But at least at this time, the Court accepts the proposition that there is a diplomatic effort underway to effectuate Mr. Cruz Medina's removal to a country other than Honduras, and concludes that that evidence is sufficient to rebut Petitioner's showing. And because Mr. Cruz Medina would only have a higher burden if he currently were within his *Zadvydas* period (*i.e.*, if the *Zadvydas* six-month clock started upon his detention in June of this year), the petition would fail, at this time, under that standard too.

That ends the *Zadvydas* analysis—but only for now. The *Zadvydas* analysis is inherently dynamic, on multiple dimensions, as reflected in the open questions identified above. The Court need not and will not speculate on what would need to change to render a potential future evidentiary record sufficient to entitle Mr. Cruz Medina to habeas relief. At least in some circumstances, the mere passage of time may

22

suffice, as reflected in *Zadvydas* itself, 533 U.S. at 699, as well as in *Clark*, 543 U.S. at

386–87. New information regarding the status of removal efforts or immigration

proceedings may also bear on the analysis, or the converse, *i.e.*, if the government

"br[ings] forward nothing to indicate that a substantial likelihood of removal subsists,"

*Clark*, 543 U.S. at 386. As set forth in the order below, the Court will retain jurisdiction

and, on a monthly basis, the parties shall file supplemental submissions. Because the

government has particular access to information on what steps (if any) are being taken

to advance the removal process, the government's submissions must include all

information that the government wishes this Court to consider in deciding whether a

time may come when the *Zadvydas* balance tips in Mr. Cruz Medina's favor.

### E.    Petitioner's *Accardi* claim

Petitioner's primary argument for habeas relief is based on *Zadvydas*. But he also

asserts that ICE violated certain regulations that govern revocation of immigration

orders of supervision. ECF No 1 at 9 ("THIRD CLAIM FOR RELIEF: Violation of 8

C.F.R. § 241.4"). Under the *Accardi* doctrine, "when an agency fails to follow its own

procedures or regulations, that agency's actions are generally invalid." *Nader v. Blair*,

549 F.3d 953, 962 (4th Cir. 2008) (citing *United States ex rel. Accardi v. Shaughnessy*,

347 U.S. 260, 268 (1954)).

First, Mr. Cruz Medina argues that an Order of Supervision may be revoked only

where the noncitizen "violates the conditions of release." ECF No. 10 at 15 (quoting 8

C.F.R. § 241.4(l)(1)).[10] But a different subsection of that regulation authorizes ICE to re-

---

[10] To the extent that Mr. Cruz Medina challenges his detention on the basis that he was
detained "[w]ithout prior warning" at his June 3 check-in, ECF No. 1 at 7, he has not
provided any authority to show that he was entitled to advance notice that he would be

detain a person in order to "enforce a removal order." 8 C.F.R. § 241.4(l)(2)(iii). Mr.

Cruz Medina notes that although he is subject to a removal order, it was not "executable

at the time the Notice of Revocation of Release was issued" because he had been

awarded withholding of removal. ECF No. 10 at 16. But he has not shown that the

existence of a withholding-of-removal order renders inapplicable the regulation

authorizing detention to "enforce a removal order." 8 C.F.R. § 241.4(l)(2)(iii).

Second, he argues that the person who signed the Notice of Revocation of

Release, an unidentified person signing "for" Acting Field Office Director Nakita Baker,

ECF No. 9-2 at 1, did not have authority to issue the revocation notice. ECF No. 10 at 16.

Under the applicable regulation, an "Executive Associate Commissioner" is authorized

to "revoke release and return to Service custody an alien previously approved for release

under the procedures in this section." 8 C.F.R. § 241.4(l)(2). A "district director" such as

Director Baker may exercise revocation authority "when, in the district director's

opinion, revocation is in the public interest and circumstances do not reasonably permit

referral of the case to the Executive Associate Commissioner." *Id.* Regardless of who

decides to issue a revocation order, revocation is only authorized "when, in the opinion

of the revoking official: (i) The purposes of release have been served; (ii) The alien

violates any condition of release; (iii) It is appropriate to enforce a removal order or to

commence removal proceedings against an alien; or (iv) The conduct of the alien, or any

other circumstance, indicates that release would no longer be appropriate." *Id.* Mr. Cruz

Medina's argument is that the Notice of Revocation is invalid because (1) although Ms.

---

detained at that time. *See also* ECF No. 10 at 4 n.1 (collecting cases where individuals
have been "re-detained without prior warning").

Baker is a District Director she did not personally sign the Notice, and (2) the Notice does not "contain" findings that "revocation is in the public interest" and that "circumstances do not reasonably permit referral to the Executive Associate Commissioner." ECF No. 10 at 16. Although Petitioner is correct that the Executive Associate Commissioner or a District Director must personally decide whether and when to revoke release, Petitioner has not identified authority that would suggest that a District Director is prohibited from delegating *signatory* authority, or authority that would suggest that a District Director must include in a revocation order the findings set forth in § 241.4(l)(2).

Third, Mr. Cruz Medina contends that the government did not "promptly" grant him an informal interview following his revocation of release as required by regulation. 8 C.F.R. § 241.4(l)(1) ("The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."). The Notice of Revocation of Release stated that such interview "will promptly be afforded," ECF No. 9-2, but more than two weeks thereafter, the government conceded that no such interview had been scheduled. ECF No. 9 at 14. The government argues that ICE is not required to "conduct a custody review under these procedures when [ICE] notifies the alien that it is ready to execute an order of removal." ECF No. 9 at 16 (quoting 8 C.F.R. § 241.4(g)(4)). As to this component of Petitioner's *Accardi* claim, Mr. Cruz Medina has not pointed to authority showing that the remedy for a violation of this regulation (if such a violation has occurred) is release from detention. This decision, however, does not preclude Mr. Cruz Medina from providing the Court additional updates about the government's provision

25

of (or failure to provide) an informal interview consistent with 8 C.F.R. § 241.4(l)(1) or to request a remedy if he can establish such a violation.

### F.    The government's request to stay or dismiss based on *D.V.D.*

Finally, the government argues in the alternative that the Court should dismiss or stay this case pending the resolution of the case *D.V.D. v. U.S. Department of Homeland Security*, Case No. 25-cv-10676-BEM (D. Mass). ECF No. 9 at 10-11, 22. That case involves whether a person who is facing a so-called third-country removal is entitled to certain procedural protections with respect to removal. Mr. Cruz Medina is a member of the class certified in that case. The government contends that this case should be stayed pending the resolution of *D.V.D.* because the Petition is "seeking the same relief" as the *D.V.D.* class members. *Id.* at 22.[11]

The government has not shown that a stay or dismissal would be appropriate. The *D.V.D.* litigation does not address, for example, whether or when a person may be detained while the government attempts to effectuate a third-country removal. Because Mr. Cruz Medina challenges his continued *detention,* which is not addressed in *D.V.D.*, a stay or dismissal of the entire case based on *D.V.D.* would be inappropriate.

---

[11] In *D.V.D.*, the U.S. District Court for the District of Massachusetts issued a preliminary injunction requiring certain procedures if the government were to seek removal of a class member to a "third country, *i.e.*, any country not explicitly provided for on the alien's order of removal." *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 392 (D. Mass. 2025). That injunction has since been stayed by the Supreme Court. *U.S. Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025).

## III.    CONCLUSION AND ORDER

For the reasons explained above, the Court hereby ORDERS as follows:

1.      Petitioner Jose Cruz Medina's Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED IN PART (as to the request that Respondents justify a basis for detention) and DENIED IN PART without prejudice (as to the issuance of a writ of habeas corpus ordering Petitioner's release from custody).

2.      By **September 5, 2025**, the parties SHALL FILE supplemental status reports to update the Court on any information that bears upon the likelihood of Mr. Cruz Medina's removal in the reasonably foreseeable future, including regarding the status of removal proceedings and the status of efforts to obtain travel documents for Mr. Cruz Medina, as well as to confirm that Mr. Cruz Medina has been granted an informal interview pursuant to 8 C.F.R. § 241.4(l)(1) and/or 8 C.F.R. § 241.13(h)(4), (i)(2).

3.      Respondents' report to be filed by September 5 shall also set forth the factual basis for the contention in the Notice of Revocation of Release, *see* ECF No. 9-2, that as of the notice's issuance on June 3, 2025 at around 3:00 pm, Mr. Cruz Medina's case was "under current review by El Salvador for the issuance of a travel document," *id*. at 1.

4.      The parties further SHALL FILE supplemental status report every 30 days thereafter until ordered otherwise by the Court.

5.      The Court shall retain jurisdiction of this matter to enforce compliance with this Order.

Date:  August 11, 2025                                    _____/s/_____
                                                          Adam B. Abelson
                                                          United States District Judge

27