## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JOSE CRUZ-MEDINA

    *Petitioner,*

    v.

KRISTI NOEM, *et al.,*

    *Respondents*

Case No. 25-cv-1768-ABA

## MEMORANDUM OPINION

Petitioner Jose Cruz-Medina is originally from Honduras and illegally reentered the United States in 2013 after having been previously removed in 2012. An immigration judge ("IJ") granted him withholding of removal in 2019 based on a finding that he was likely to be persecuted or tortured in Honduras. The government now proposes to remove him to Mexico. (Earlier this year, the government had proposed to remove him to El Salvador but seems to have abandoned that plan.) Petitioner has sought relief under the withholding of removal statute or the Convention Against Torture with respect to Mexico. An asylum officer denied that claim, finding that Petitioner had not established that it is more likely than not that he would be persecuted or tortured in Mexico. Petitioner has requested review of that determination by an immigration judge. The government is taking the position that Petitioner has no entitlement to IJ review.

In this Court, Petitioner does not seek review of that negative reasonable fear determination. He also does not challenge the underlying order of removal. Instead, pursuant to the habeas petition filed in this Court, Petitioner has moved for a preliminary injunction to stay his removal pending review by an immigration judge of

the asylum officer's negative reasonable fear determination. For the reasons set forth below, the Court concludes that it has jurisdiction to adjudicate that narrow claim and that Petitioner has shown a strong likelihood of success on his claim that removing Petitioner to Mexico without an immigration judge reviewing his claim would be unconstitutional.

## I.    Background

Petitioner is a citizen of Honduras and no other country. ECF No. 1 ¶ 21. In May 2012, he entered the United States without being legally admitted. ECF No. 37 at 1. After being apprehended by United States Immigration and Customs Enforcement ("ICE"), Petitioner was removed back to Honduras within that same month. ECF No. 37 at 1; ECF No. 38 at 3. Petitioner illegally reentered in 2013. ECF No. 37 at 2; ECF No. 38 at 3.

On March 6, 2019, Petitioner was granted withholding of removal pursuant to the Convention Against Torture, after an immigration judge agreed that he had established that it was more likely than not that he would be tortured in Honduras. ECF No. 1 ¶ 22. On December 8, 2020, Petitioner was issued an Order of Supervision. ECF No. 10-2. Since March 6, 2019, Petitioner has not been convicted of any crimes or violated the terms of his order of supervision. *Id.* ¶ 24. On June 3, 2025, Petitioner appeared for a scheduled check-in with ICE and was detained without prior warning or explanation. *Id.* ¶ 25. Petitioner was served with a Notice of Removal informing him of ICE's intent to remove him to El Salvador. ECF No. 9-1. Petitioner filed a Petition for Writ of Habeas Corpus that same day. ECF No. 1.

Between the filing of the Petition and September 9, 2025, all pleadings and hearings in this case had stated that ICE intended to remove Petitioner to El Salvador *only*. ECF No. 36 at 5; ECF No. 23. *See* ECF Nos. 9, 20. A hearing held on September 9,

2025 was the first time this Court was made aware of Respondents' subsequent intent to remove Petitioner to Mexico. ECF No. 25. In fact, Respondents had served Petitioner with a Notice of Removal regarding their intent to remove him to Mexico on June 17, 2025 and, at 7:38 p.m. on September 12, 2025, informed the Court that removal to Mexico was imminent. ECF No. 25 ¶¶ 6, 10; ECF No. 25-1. The Court was also then informed that, on September 5, 2025, Petitioner was interviewed by a U.S. Department of Homeland Security ("DHS") asylum officer who determined that Petitioner had not established that it was more likely than not that he would be persecuted or tortured in Mexico. ECF No. 25 ¶¶ 7–8; ECF No. 25-2.

Petitioner then filed a request for a Temporary Restraining Order ("TRO") to enjoin his removal from the United States before he receives a de novo review by an IJ on the issue of whether he has a reasonable fear of removal to Mexico. ECF No. 26 ¶ 11. The Court granted a TRO on September 12 at 10:12 p.m., effective through Wednesday, September 17 at 1:00 p.m. ECF No. 30. The Court extended the TRO until Tuesday, October 7, 2025 at 5:00 p.m., first by stipulation of the parties (ECF No. 33) in order to allow time for briefing on a Motion for Preliminary Injunction (ECF No. 34) and again for good cause to review the complex issues of this case (ECF No. 41).

Petitioner filed a Motion for Preliminary Injunction seeking the Court to enjoin his removal to Mexico until an immigration judge reviews his reasonable fear claim. ECF No. 36. Respondents filed a response to the motion. ECF No. 37. Petitioner filed a reply brief. ECF No. 38. The Court held a hearing on the motion on September 25, 2025. ECF No. 40.

## II.    Standard of Review

A preliminary injunction is a form of equitable relief intended to prevent irreparable harm while a lawsuit remains pending. *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014). To obtain a preliminary injunction, Petitioner must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tip in his favor; and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *League of Women Voters*, 769 F.3d at 236; *Am. Fed'n of Tchrs. v. Bessent*, -- F.4th --, No. 25-1282, 2025 WL 2313244, at *3–*4 (4th Cir. Aug. 12, 2025). The third and fourth factors merge when the government is the opposing party. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III.    Discussion

### A.    Jurisdiction

The government identifies four subsections of 8 U.S.C. § 1252 that it contends strip this Court of subject matter jurisdiction over Petitioner's claim that he should not be removed to Mexico without the opportunity for an immigration judge to review his withholding claim. But under the plain language of those provisions, and binding Supreme Court precedent, none of those provisions applies.

First, the government argues that this Court lacks jurisdiction under 8 U.S.C. § 1252(g). This section provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). The Supreme Court has applied Section 1252(g)'s jurisdictional bar narrowly, holding that it "applies only to three

4

discrete actions that the Attorney General may take," namely a "'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (hereinafter, "*AADC*"). As the Fourth Circuit has also explained, "§ 1252(g) does not apply to 'all claims arising from deportation proceedings,' because § 1252(g) stripped the federal courts of jurisdiction only to review challenges to the Attorney General's decision to *exercise her discretion* to initiate or prosecute these specific stages in the deportation process." *Bowrin v. U.S. I.N.S.*, 194 F.3d 483, 488 (4th Cir. 1999) (quoting *AADC*, 525 U.S. at 482) (emphasis added) (internal citations omitted).

Thus, although "§ 1252(g) precludes review of the execution of removal orders, it does not bar 'consideration of purely legal questions that do not challenge the Attorney General's discretionary authority.'" *Ortiz v. Mayorkas*, No. 22-cv-0647-SAG, 2023 WL 2931851, at *3 (D. Md. Apr. 13, 2023) (quoting *Wanrong Lin v. Nielsen*, 377 F. Supp. 3d 556, 563 (D. Md. 2019)), *aff'd sub nom. Ortiz v. Noem*, No. 23-1468, 2025 WL 1392162 (4th Cir. May 14, 2025); *see also Ibarra-Perez v. United States*, -- F. 4th. --, No. 24-631, 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (holding that § 1252(g) does not apply to claims that raise "a 'purely legal question' that 'does not challenge the Attorney General's discretionary authority.'") (quoting *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004)). The issue presented here—whether due process requires an immigration judge to review a negative reasonable fear determination made outside the context of expedited removal proceedings—is a purely legal question; petitioner does not challenge an exercise of discretion by the government. Thus, Section 1252(g) does not prevent this Court from adjudicating Petitioner's claim.

Second, the government argues that this Court lacks jurisdiction under 8 U.S.C. § 1252(a)(5). That section provides that if a petitioner seeks "judicial review of an order of removal entered or issued under any provision of this chapter," the "sole and exclusive means" for asserting such a "petition for review" is one "filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(5). Here, Petitioner is not seeking "judicial review of an order of removal." Rather, he is seeking a ruling that, as a matter of due process, he is entitled to review by an immigration judge of the asylum officer's determination that he has no reasonable fear of being sent to Mexico. As the Ninth Circuit recently explained in *Ibarra-Perez*, because Petitioner, like Ibarra-Perez in that case, "challenges ICE's actions taken after his removal proceedings before the IJ and [Board of Immigration Appeals] had ended . . . Section 1252(a)(5) does not apply because Ibarra-Perez does not seek review of his removal order." -- F.4th --, 2025 WL 2461663, at *9; *see also Riley v. Bondi*, 606 U.S. --, 145 S. Ct. 2190, 2199 (2025) ("[T]he finality of [an] order of removal . . . does not depend in any way on the outcome of the withholding-only proceedings.") (quoting *Johnson v. Guzman Chavez*, 594 U.S. 523, 539 (2021)). If the Court here determines on the merits (as it does herein as a preliminary matter) that his removal must be reviewed by an immigration judge in light of his assertion of a fear of persecution if he were removed to Mexico, the finality of his removal order will not be affected. The only result would be that an immigration judge would review the question of whether Petitioner may be removed to Mexico. Therefore, Section 1252(a)(5) is not implicated.

Third, the government contends that this Court lacks jurisdiction under 8 U.S.C. § 1252(b)(9). This section provides that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the

6

United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). But Petitioner's current claim arose long after entry of his final removal order and completion of his removal proceedings; he is not seeking judicial review of an issue arising from an "action taken or proceeding brought to remove" him. *See Ibarra-Perez*, -- F.4th --, 2025 WL 2461663, at *9 (explaining that instead of challenging his removal, "Ibarra-Perez challenges ICE's separate and post-hearing decision to remove him to Mexico," which he "could not have contested . . . through the normal petition-for-review process because it was made after his removal proceedings had ended"; "[t]o state the obvious, Ibarra-Perez could not seek review of a decision that had not been made."). Moreover, § 1252(b)(9), which is sometimes called the "zipper clause," *see Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 230 (2020), is entitled "Consolidation of questions for judicial review." Its clear purpose is to prevent piecemeal appeal of removal issues. But as in *Ibarra-Perez*, at the time of Mr. Cruz Medina's removal proceedings, he could not possibly have appealed a *future* determination by the government that he was removable to Mexico. Concluding that Section 1252(b)(9) applies to Petitioner's current claim would lead to an absurd result that could not feasibly have been contemplated by Congress.

Fourth, the government contends that the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA") and 8 U.S.C. § 1252(a)(4) preclude this Court from considering the requested relief. Under § 1252(a)(4), "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment, except as provided in subsection (e)." *See also* FARRA, Pub.

L. No. 105–277, § 2242(d), 112 Stat. 2681, codified as note to 8 U.S.C. § 1231 (providing that "nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the" Convention Against Torture). At most, this argument relates to Petitioner's eligibility for relief under the Convention Against Torture. Section 1252(a)(4) does not speak to this Court's jurisdiction in connection with Petitioner's claim that he is entitled to review by an immigration judge of his claim for withholding from removal under § 1231(b)(3), and the government does not argue otherwise. Moreover, Petitioner is not seeking review of a "cause or claim" under the Convention Against Torture; he is seeking a ruling that, under regulations applicable to reinstatement of removal orders, or as a matter of due process, he is entitled to IJ review of the asylum officer's negative reasonable fear determination, so § 1252(a) has no application here in any event. Therefore, FARRA and § 1252(a)(4) do not bar Petitioner's claim in this Court either.

Having concluded that this Court has subject matter jurisdiction to hear Petitioner's claim, it now turns to the merits of the parties' arguments.

### B.    Likelihood of Success on the Merits

Petitioner has asserted that he is entitled to withholding of removal with respect to Mexico, which is the latest country to which the government has asserted an intent to remove him, and to which the government states it will remove him as soon as it is permitted to do so. ECF No. 26; ECF No. 36; ECF No. 25 ¶ 10; ECF No. 37 at 5. There is no evidence in the record that Mexico has agreed to accept Petitioner, and acceptance by Mexico is required before he can be removed there. 8 U.S.C. § 1231(b)(2)(E)(vii). And so substantial questions remain about whether there is a substantial likelihood of Petitioner's removal in the reasonably foreseeable future, and thus how much longer the

government may continue to detain him without coming forward with such evidence. *See Cruz Medina v. Noem*, -- F. Supp. 3d --, Case No. 25-cv-1768-ABA, 2025 WL 2306274, at *9 (D. Md. August 11, 2025). Those questions are heightened by the fact that the government represented to Petitioner on the original Notice of Revocation of Release that his case was, at that time, "under review" by the government of El Salvador, ECF No. 9-2 at 1.

But those matters, which relate to whether the government may continue to detain him consistent with 8 U.S.C. § 1231(a)(6) and *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001), are not directly pertinent to Petitioner's current motion for a preliminary injunction. He has asserted a fear that, if he is removed to Mexico, his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1231(b)(3)(A), and that he is likely to be tortured within the meaning of the Convention Against Torture. ECF No. 10-3; ECF No. 26; ECF No. 36. *See* 8 C.F.R. § 1208.18(a)(1) (defining torture). After the government informed Petitioner of its intention to remove him to Mexico, and after Petitioner asserted this fear, an asylum officer concluded that Petitioner "did not establish that it is more likely than not that [he] will be persecuted or tortured in Mexico." ECF No. 25-2. The government's position is that it is now free to remove him to Mexico, with no further review. ECF No. 37 at 5–12. Petitioner contends that the applicable DHS regulations and the Due Process Clause of the Fifth Amendment entitle him to a review of that "reasonable fear" determination by an immigration judge. ECF No. 36 at 9–13.

For the following reasons, the Court concludes that the regulation that applies to *reinstated* removal orders (8 C.F.R. § 1208.31(g)), which expressly requires expedited IJ

review of negative reasonable fear determinations, does not apply here because
Petitioner is not presently the subject of a reinstated removal order. But Petitioner has
shown a high likelihood of success on his claim that due process—like § 1208.31(g) in
the analogous reinstatement context—entitles a noncitizen who has asserted a fear of
persecution or torture to review of that claim not only by an asylum officer but also by
an immigration judge.

### 1.    Petitioner technically does not qualify for mandatory review by an immigration judge under 8 C.F.R. § 1208.31(g)

Under 8 C.F.R. § 1208.31(g), an "asylum officer's negative decision regarding
reasonable fear shall be subject to de novo review by an immigration judge upon the
alien's request." But that regulation applies only to noncitizens being removed under 8
U.S.C. § 1228(b) and § 1231(a)(5). 8 C.F.R. § 1208.31(a). Petitioner undisputedly is not
being removed under 8 U.S.C. § 1228(b), which applies to noncitizens who were
convicted of an aggravated felony. The government does not contend Mr. Cruz Medina
has any criminal record, let alone that he committed an "aggravated felony."

It also turns out that although Mr. Cruz Medina was removed in 2012, and
illegally reentered, and then was placed in removal proceedings, Mr. Cruz Medina's
"removal" has not technically been "reinstated" within the meaning of 8 C.F.R. §
1208.31. Section 1208.31(a) states that its procedures—including IJ review of negative
reasonable fear determinations—apply to noncitizens "whose deportation, exclusion, or
removal *order* is reinstated under [8 U.S.C. § 1231(a)(5)]." 8 C.F.R. § 1208.31(a)
(emphasis added). That cross-referenced statute, in turn, reads as follows:

> **(5) Reinstatement of removal orders against aliens
> illegally reentering**. If the Attorney General finds that an
> alien has reentered the United States illegally after having

been removed or having departed voluntarily, under an order
of removal, *the prior order of removal is reinstated* from its
original date and is not subject to being reopened or reviewed,
the alien is not eligible and may not apply for any relief under
this chapter, and the alien shall be removed under the prior
order at any time after the reentry.

8 U.S.C. § 1231(a)(5) (emphasis added).

Here, the government is not seeking to remove Mr. Cruz Medina to Mexico
pursuant to the order that resulted in his 2012 removal. Under the § 1231(a)(5)
terminology, although "the Attorney General [found] that [Petitioner] reentered the
United States illegally after having been removed . . . under an order of removal," here
the government has not "reinstated" a "*prior order of removal*" but rather has been
proceeding since 2019 pursuant to a *new* order of removal. If Petitioner's current
removal proceedings were pursuant to the "reinstate[ment]" of a "prior order of
removal," then as a matter of the plain language of 8 C.F.R. § 1208.31, the government
could not remove Petitioner to Mexico until and unless an immigration judge concurred
with the asylum officer's rejection of Petitioner's reasonable fear claim. But because the
current proceedings are pursuant to a separate, later-issued order of removal, 8 C.F.R. §
1208.31 does not directly govern, and thus does not resolve the question of whether
Petitioner is entitled to IJ review with respect to removal to Mexico.

> **2.    Petitioner does have a procedural due process right to
> review by an immigration judge**

The fact that 8 C.F.R. § 1208.31 does not directly apply, however, does not
conclude the analysis, because Petitioner contends that the Due Process Clause of the
Fifth Amendment entitles Petitioner to the same level of process here to which 8 C.F.R.

11

§ 1208.31 would entitle him if the government were proceeding based on a reinstated order of removal or if he were an aggravated felon.

"The procedural component of due process 'imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause.'" *D.B. v. Cardall*, 826 F.3d 721, 741 (4th Cir. 2016) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)); *see* U.S. Const. amend. V. "And when the government deprives a person of a protected liberty or property interest, it is obliged to provide 'notice and opportunity for hearing appropriate to the nature of the case.'" *Id.* (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)). The question of what form of "notice and opportunity for hearing" is "appropriate" and thus constitutionally required in a given case requires considering three factors: "(1) the nature of the private interest that will be affected, (2) the comparative risk of an erroneous deprivation of that interest with and without additional or substitute procedural safeguards, and (3) the nature and magnitude of any countervailing interest in not providing additional or substitute procedural requirements." *Id.* at 742 (citing *Turner v. Rogers*, 564 U.S. 431, 444–45 (2011)). "The three-factor *Mathews* framework is 'flexible' and highly 'fact-specific.'" *Id.* at 743 (citing *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 319 (2nd Cir. 2002)). "The mere availability and utilization of some procedures does not mean they [a]re constitutionally sufficient. That is, the Fifth Amendment guarantees 'due process of law,' not just 'some process of law.'" *Id.* (citing *Davidson v. City of New Orleans*, 96 U.S. 97, 107 (1877) (Bradley, J., concurring)).

"'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Given that a "withholding of

removal is country-specific, . . . if a noncitizen who has been granted withholding as to one country faces removal to an alternative country, then she must be given notice and an opportunity to request withholding of removal to *that* particular country." *Guzman Chavez v. Hott*, 940 F.3d 867, 879 (4th Cir. 2019), *rev'd on other grounds*, 594 U.S. 523 (2021) (citing *Kossov v. I.N.S.*, 132 F.3d 405, 409 (7th Cir. 1998)) (emphasis in original). In other words, "[n]oncitizens have a right to meaningful notice and opportunity to be heard before being deported to a third country." *Sagastizado Sanchez v. Noem*, Civ. No. 5:25-cv-104, Dkt. No. 18, slip op. at 3 (S.D. Tex. Sept. 10, 2025) (hereinafter, *Sagastizado I*) (citing *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1004 (W.D. Wash. 2019), *J.G.G.*, 604 U.S. at 673, and *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 387 (D. Mass. 2025)).

Here, the parties do not dispute that Petitioner is entitled to due process in the context of his removal; the dispute is over *how much* process Petitioner is entitled to. Petitioner argues that, based on his contention that he will face persecution or torture in Mexico, he is entitled to review not only by an asylum officer but also, if the officer's determination is negative, to review by an immigration judge. ECF No. 36 at 9. The government argues that the screening interview and determination by the asylum officer was sufficient to satisfy due process. ECF No. 37 at 7–11. For the reasons stated below, the *Mathews* factors tip in Petitioner's favor. Petitioner has a substantial likelihood of success on his claim that the Due Process Clause entitles him to review by an immigration judge of the asylum officer's negative reasonable fear determination—the same procedure that would apply if he were the subject of a reinstated removal order or had been convicted of an aggravated felony.

### a. Nature of the interest protected

As noted above, "'[i]t is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *J.G.G.*, 604 U.S. at 673 (quoting *Flores*, 507 U.S. at 306). "If [noncitizens] would face persecution or other mistreatment in the country designated under § 1231(b)(2)," Congress has established a right to various remedies, including withholding of removal under § 1231(b)(3)(A), to "ensur[e] their humane treatment." *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 348 (2005). Here, Petitioner has established that he has an interest in not being removed to a country where he alleges he would face persecution or torture. That is precisely the type of interest that courts consistently have held is significant enough to justify procedural protections to ensure that individuals who are actually entitled to withholding of removal under § 1231(b)(3) or the Convention Against Torture receive such protection. *See, e.g.*, *J.G.G.*, 604 U.S. at 673; *Kossov*, 132 F.3d at 409; *Sagastizado Sanchez v. Noem*, Case No. 5:25-cv-104, Dk No. 26, slip op. at 23 (S.D. Tex. October 2, 2025) (hereinafter, *Sagastizado II*); *D.V.D.*, 778 F. Supp. 3d at 388.

### b. Risk of erroneous deprivation

The second *Mathews* factor requires comparing the "risk of an erroneous deprivation of [a petitioner's] interest with and without additional or substitute procedural safeguards." *D.B.*, 826 F.3d at 742. As an initial matter, in applying *Mathews*, "the Supreme Court has indicated that the risk of an erroneous deprivation is too high where an individual is not provided 'notice of the factual basis' for a material government finding and 'a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker.'" *Kirk v. Comm'r of SSA*, 987 F.3d 314, 325 (4th Cir. 2021) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004)). "The Fifth Amendment

14

requires that ICE provide a meaningful opportunity for petitioner's claim of fear to be heard. The guarantee of due process includes the right to a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim." *Aden*, 409 F. Supp. 3d. at 1010 (citing *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001)).

Here, Petitioner does not contend that he was deprived of notice, or a decision by a neutral decisionmaker. Rather, the question is whether a decision by a single asylum officer, rather than the opportunity for review by an immigration judge, is sufficient to adequately minimize the risk of an erroneous rejection of a fear-of-persecution claim. The Court need look no further than DHS regulations themselves to conclude that, where a person alleges that he would be persecuted or tortured if removed to a particular country, a single review by an asylum officer creates an unacceptably high risk of erroneous deprivation. DHS regulations address various scenarios where individuals may seek protection from removal based on a fear of how they will be treated in another country, and in every scenario addressed by those regulations they entitle noncitizens to *de novo* review by an immigration judge of negative asylum officer determinations— from applicants for admission who are found inadmissible, 8 C.F.R. § 1208.30(g), to reinstated removal orders, C.F.R. § 1208.31(g). Even in the context of *expedited* removal, an applicant who "'indicates either an intention to apply for asylum' or 'a fear of persecution'" may "appeal to an immigration judge, who can take further evidence and 'shall make a de novo determination.'" *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 109–10 (2020) (citing 8 U.S.C. § 1225(b)(1)(A)(i)–(ii), 8 C.F.R. §§ 1003.42(c), (d)(1), and 8 U.S.C. § 1225(b)(1)(B)(iii)(III)); *see also* 8 C.F.R. § 1208.30(f)–(g).

In short, "there are no regulations that provide for circumstances under which USCIS [United States Citizenship and Immigration Services] is given the authority to conduct fear-screening interviews without providing for independent review of that screening by an IJ." *Sagastizado II*, slip op. at 20. The only difference here—as compared to the circumstances expressly addressed by the DHS regulations described above such as expedited removal or reinstatement—is that Mr. Cruz Medina's current removal proceedings happen not to constitute a reinstatement of a prior removal order or an expedited removal.

The government offers no articulable reason why there is any lesser risk of erroneous deprivation in this scenario than in scenarios where DHS regulations contemplated the potential risk of erroneous deprivation of a noncitizen's liberty interest and determined to mandate review by an immigration judge. While there remains a risk of erroneous deprivation following review by an immigration judge, this Court defers to DHS's own longstanding determination that similar circumstances call for providing IJ review to lessen the risk of erroneous deprivation of relief under the withholding statute or the Convention Against Torture.

### c. Countervailing interest in not providing additional procedural requirements

In evaluating the third *Mathews* factor, the Court must balance the Petitioner's interest and the risk of erroneous deprivation with "the administrative burden and other societal costs that would be associated with requiring, as a matter of constitutional right," the additional procedural safeguards requested. *Mathews*, 424 U.S. at 347. "At some point the benefit of an additional safeguard to the individual affected by the

administrative action and to society in terms of increased assurance that the action is just, may be outweighed by the cost." *Id.* at 348.

The government offers three arguments for why, even if IJ review is available in every other context where a noncitizen asserts a fear of persecution or torture, countervailing government interests outweigh Petitioner's interest in this context.

First, the government argues that it has provided Petitioner with the amount of process to which he is entitled based on both the reading of 8 U.S.C. § 1231(b) and 8 C.F.R. § 241.15 and the March 30, 2025 DHS Guidance Regarding Third Country Removals ("DHS Guidance"). ECF No. 37 at 6–8. The government states that Petitioner is being removed pursuant to 8 U.S.C. § 1231(b)(2)(E) and 8 C.F.R. § 241.15.[1] Under 8 U.S.C. § 1231(b)(2)(E)(vii), if there is no other applicable country of removal (such as the country of nationality, a country designated by the noncitizen, or the country from which the noncitizen was admitted into the United States), "the Attorney General shall remove the alien to . . . another country whose government will accept the alien into that country." Under 8 C.F.R. § 241.15(a), "the Secretary retains discretion to remove an alien to any country described in . . . 8 U.S.C. § 1231(b)." Finally, 8 C.F.R. § 1241.15 provides that "immigration judges and the Board of Immigration Appeals have no jurisdiction to review any determination by officers of the Department of Homeland Security *under 8 C.F.R. § 241.15*" (emphasis added). The government argues that,

---

[1] In the government's brief, it states that its authority is under 8 U.S.C. § 1231(b)(2)(E) but include quoted language from 8 U.S.C. § 1231(b)(1)(C)(iv). ECF No. 37 at 7. Given that the latter applies only to noncitizens whose immigration proceedings were initiated at the time of their arrival in the United States and that it is uncontested that Petitioner re-entered the United States in 2013 and immigration procedures were not until 2019, this Court assumes the government is relying on § 1231(b)(2)(E).

reading these statutes and regulations together, "the Secretary has the sole discretion to decide to remove a noncitizen to a third country." ECF No. 37 at 7.

The government overreads these statutes and regulations. The government is correct that under 8 C.F.R. § 241.15(a) and 8 C.F.R. § 1241.15 immigration judges (and district courts) do not have jurisdiction to review DHS decisions regarding, for example, when and where to propose to remove a noncitizen. *See also* 8 U.S.C. § 1231(b)(2)(E) (providing guidelines for the Attorney General to determine to which countries to propose to remove noncitizens). But Petitioner does not dispute that DHS had discretion to propose Mexico as a country of removal and that immigration judges lack jurisdiction to review that decision. Instead, Petitioner's argument is that the government has not provided due process for Petitioner's *claim of reasonable fear* of persecution or torture in Mexico. ECF No. 36 at 10, 12–13. And insofar as the DHS Guidance reflects the government's position to eliminate IJ review of negative reasonable fear determinations, *see* ECF No. 28-1 at 3, not only must any agency policy comply with due process, *J.G.G.*, 604 U.S. at 673, but an agency must comply with its own regulations, *Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008) (*citing United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)), and the DHS regulations requiring IJ review in analogous circumstances, discussed above, remain valid and binding.

Second, the government is concerned that requiring the government to forbear from removing Petitioner until an IJ reviews Petitioner's fear-of-persecution claim will create delay and some administrative burden. The government is entitled to seek expedition and efficiency in enforcing the immigration laws. But some delay and administrative burden is inherent in due process. And here again DHS's own regulations

confirm that any applicable delay and burden is not only justified, but minimal. Under the existing, analogous regulations, an immigration judge is required to conduct such mandatory review within 7 days or 10 days. 8 C.F.R. § 1003.42(e); 8 C.F.R. § 1208.31(g).

The government makes a similar point when it expresses concern about an endless cycle in which noncitizens subject to third-country removal repeatedly express fear of persecution or torture for every proposed destination. But that argument flips the due process analysis on its head. If an immigration judge determines that a person has shown a likelihood of persecution or torture in a particular country, the government would violate the withholding statutes, DHS regulations and international law by sending such person to such country. In other words, the government's argument presumes that immigration judges will routinely reverse asylum officers' negative reasonable fear determinations. But if true, that proves Petitioner's point that there is a substantial risk of erroneous deprivation of protected liberty interests if the category of individuals like Petitioner (no prior removal "order," no aggravated felony) are denied IJ review. A substantial enough risk of erroneous determinations by asylum officers supports more process, not less. The purpose of procedural due process is to "'impose[] constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause.'" *D.B.*, 826 F.3d at 741 (citing *Mathews*, 424 U.S. at 332). If the government is concerned about regular reversals of its asylum officers' determinations, then requiring the additional review imposes a necessary constraint before individuals are removed to countries where they risk the possibility of persecution, torture, or death.

Finally, the government argues this Court should read into the Supreme Court's stay order in *D.V.D.* that "all the arguments Petitioner makes in his Motion for

Preliminary Injunction have been review, and rejected, by the Supreme Court." ECF No. 37 at 11 (citing 778 F. Supp. 3d at 387–391, *vacated*, 145 S. Ct. 2153 (2025), *clarified by* 145 S. Ct. 2627 (2025)). But the Supreme Court in *D.V.D.* provided no reasoning for its entry of the stay and whether it came to that determination based on the merits or procedural posture of the case. *See Nguyen v. Scott*, -- F. Supp. 3d.--, Case No. 2:25-cv-01398, 2025 WL 2419288, at *22 (W.D. Wash. August 21, 2025) (citing *Merrill v. Milligan*, 142 S. Ct. 879, 879 (Kavanaugh, J., concurring) ("The Court's stay order is not a decision on the merits.")); *see also Sagastizado II*, slip op. at 25–26 (concluding that, without clearer direction, reading into the *D.V.D.* "stay is an inherently speculative endeavor"). The closest evidence this Court has of the reasoning behind the majority's decision is the dissent's conclusion that the majority's decision to stay likely was based principally on dissatisfaction with the case's posture as a class action, not necessarily the underlying merits. *D.V.D.*, 145 S. Ct. at 2160–61 (Sotomayor, J., dissenting). A Supreme Court decision obviously "constitutes a precedent that commands respect." *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 606 U.S. --, 145 S. Ct. 2658, 2663 (2005) (Gorsuch, J., concurring in part and dissenting in part). But "[t]his Court cannot ascertain from the Supreme Court's emergency order whether it found the government likely to succeed on its jurisdictional or substantive claims. This distinction is especially important in [the *D.V.D.*] case, where one of the government's primary arguments—that the [district] court had no power to enter *classwide* injunctive relief—would have no bearing on the merits of individual habeas petitions." *Nguyen*, 2025 WL 2419288, at *23 (emphasis in original). All this Court can do is apply existing precedents and due process standards, and, under those standards, the Court can discern no rational basis for stripping Mr. Cruz Medina of the opportunity to appear before an immigration judge

20

where persons who *already* appeared before an immigration judge (due to an earlier removal that has been reinstated) or who committed aggravated felonies are entitled to IJ review.

Accordingly, Petitioner has shown a strong likelihood of success on the merits of his claim that until and unless an immigration judge concurs with the asylum officer's determination that Petitioner lacks a reasonable fear of persecution or torture in Mexico, due process precludes his removal to Mexico.

### C.   Likelihood of irreparable harm

Petitioner argues that he is likely to suffer irreparable harm in the absence of preliminary relief due to his expressed fear of torture and persecution if removed to Mexico and the government's own questioning of its ability to return deported citizens. ECF No. 36 at 14 (citing *Abrego Garcia v. Noem*, Case No. 25-1345, 2025 WL 1021113 (4th Cir. April 7, 2025) and *D.A. v. Noem*, -- F. Supp. 3d. --, Case No. 25-cv-3135, 2025 WL 2646888 (D.D.C. Sept. 15, 2025)). The government provides no response to this factor other than a broad statement in the introduction of its brief that it will suffer irreparable harm if the motion is granted and its statement that the Supreme Court's stay in *D.V.D.* was decided on the merits and should be deemed to have decided the issues presented here. ECF No. 37 at 1.

As the Court has stated previously, the grant of a stay without more is not necessarily a decision on the merits and therefore does not provide a precedent for this Court to follow. *See* III.B.2.c, *infra*. The Court finds that Petitioner has shown a significant likelihood of irreparable harm for the same reasons that the Court finds there to be a high risk of erroneous deprivation. *See* III.B.2.b, *infra*. The threatened harm is

clear in this case: persecution, torture, or death. These consequences are irreparable and are sufficiently dire to warrant preliminary injunctive relief.

### D.    Balance of the equities and public interest

Petitioner argues that the final two *Winter* factors weigh in his favor as there is a significant public interest in the government's compliance with the law. ECF No. 36 at 15 (citing *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). The government counters by stating that the Supreme Court's decision to stay the *D.V.D.* case "necessarily concluded that the balance of equities and public interest tipped in the Government's favor." ECF No. 37 at 12 (citing *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010)).

As the Court has stated previously, the grant of a stay without more is not necessarily a decision on the merits. *See* III.B.2.c, *infra*. While the government clearly has a legitimate interest in removing individuals who have entered the United States illegally, a preliminary injunction will cause only a minimal delay to such an action against Petitioner until either affirmance of the negative determination by an immigration judge or the selection of a new country of removal by DHS and the completion of due process based on that new selection. The government's interest is outweighed by the public interest in upholding constitutional rights and providing due process to individuals subjected to governmental actions restricting their liberty. Therefore, the balance of equities and public interest tip in favor of Petitioner.

### E.    Bond

Under Fed. R. Civ. P. 65(c), "[t]he court may issue a preliminary injunction . . . only if the movant gives security." Generally, "[t]his rule is mandatory and unambiguous." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir.

1999) (citing *District 17, UMWA v. A & M Trucking, Inc.*, 991 F.2d 108, 110 (4th Cir. 1993)). But, at times, waiver of a bond may be appropriate. *See Casa, Inc. v. Trump*, -- F. Supp. 3d. --, Case No. 25-cv-201-DLB, 2025 WL 2257625, at *11 (D. Md. Aug. 7, 2025) (citing *See Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013) (recognizing that district courts have discretion to waive the bond requirement after "expressly address[ing] the issue of security"), *Washington v. Trump*, 764 F. Supp. 3d 1050, 1053 (W.D. Wash. 2025) (declining to impose security in birthright citizenship case), and *Coreas v. Bounds*, 457 F. Supp. 3d 460, 464 (D. Md. 2020) (waiving security requirement when the "financial impact to [the government] of an improperly imposed injunction [was] limited and would not create any significant hardship")).

Petitioner has requested a waiver of a bond as he is an indigent detained noncitizen. ECF No. 36 at 15. The government has not requested any bond should the preliminary injunction be issued.

Given that courts generally waive a bond when constitutional rights are at issue and an improperly imposed injunction would not impose a substantial hardship on the government, *see Casa, Inc.*, 2025 WL 2257625, at *11; *Honeyfund.com, Inc. v. DeSantis*, 622 F. Supp. 3d 1159, 1186 (N.D. Fla. 2022) ("waiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right"), the Court will not impose a bond on the preliminary injunction here.

## IV.    Conclusion

For the reasons aforementioned, the Court finds that all four requirements for granting a preliminary injunction have been met. Accordingly, the Motion for Preliminary Injunction, ECF 36, will be granted. The preliminary injunction shall

remain in order until and unless an immigration judge affirms the negative fear determination, plus an additional 48 hours to preserve this Court's jurisdiction. A separate preliminary injunction order follows.

Date:  October 7, 2025                    _____/s/_____
                                                         Adam B. Abelson
                                                         United States District Judge